

Signed/Docketed
November 9, 2012

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF COLORADO
# The Honorable Michael E. Romero

In re:                                         )
                                               ) Case No. 10-32673-MER
THOMAS LEIGHTON WYSCAVER      )
EILEEN LAURA WYSCAVER           ) Chapter 7
                                               )
    Debtors.                          )

## ORDER GRANTING MOTION FOR TURNOVER

THIS MATTER comes before the Court on the *Trustee's Motion for Turnover of Property of the Estate* (Docket No. 28) ("Motion for Turnover") filed by Chapter 7 Trustee Harvey Sender ("Trustee"), and the *Objection to Motion for Turnover* (Docket No. 29) ("Objection") filed by debtors Thomas L. Wyscaver and Eileen L. Wyscaver (collectively, the "Debtors"). The Court has considered the pleadings and arguments presented by counsel, and hereby finds and concludes as follows.

## JURISDICTION

The Court has jurisdiction over this matter under 28 U.S.C. §§ 1334(a) and (b) and 157(a) and (b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(E) because this matter concerns an order to turn over property of the estate. Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a).

## BACKGROUND[1]

On September 3, 2010 ("Petition Date"), the Debtors filed their voluntary petition for relief under Chapter 7 of the Bankruptcy Code, and the Trustee was appointed that same day. On October 6, 2010, the Trustee conducted the Debtors' meeting of creditors under 11 U.S.C. § 341.[2] The Debtors received a Chapter 7 discharge on December 28, 2010.

---

[1] The background facts provided in this Order are based upon the testimony and evidence presented at the evidentiary hearing, and the parties' Joint Statement of Stipulated Facts (Docket No. 41). The parties stipulated to the admission of the Trustee's Exhibits 1 through 10.

[2] Unless otherwise noted, all future statutory references in the text are to Title 11 of the United States Code.

### A. Debtor's Non-Exempt Assets

On their initial Schedule B dated September 3, 2010, the Debtors disclosed cash on hand in the amount of $120.00 and funds in accounts in the aggregate amount of $125.73 ($12.71 in Wells Fargo checking account; $.43 in Wells Fargo checking account; and $112.59 in Janus Investment account). On their initial Schedule C, the Debtors claimed a 75% wage exemption under COLO. REV. STAT. §§ 13-54-104(2)(a), 5-5-105, and 5-5-106 for cash on hand and for the funds in the two Wells Fargo checking accounts. The Trustee did not file an objection to the Debtors' claimed exemptions, and stated at trial he does not oppose the claimed exemptions. The Debtors did not file any amendments to their initial schedules.

At their Meeting of Creditors, the Debtors tendered an executed Trustee Information Sheet to the Trustee signed under the penalty of perjury.[3] The Trustee Information Sheet indicates on the Petition Date the Debtors had $250.00 cash on hand, $193.43 in a Wells Fargo checking account, $297.95 in non-exempt earned but unpaid wages for Mr. Wyscaver and $2,378.75 in non-exempt earned but unpaid wages for Ms. Wyscaver.[4]

### B. Listing Agreements and Sale Contracts

Ms. Wyscaver has been a licensed real estate broker for the last eleven years. Real estate broker commissions are her sole source of income. The dispute between the parties relates to entitlement to commissions generated by Ms. Wyschaver as part of her profession.

The first commission in dispute was generated from an Exclusive Right-to-Buy Listing Contract executed on April 20, 2010 by Ms. Wyscaver as broker and Ms. Shelly R. Walton as buyer (the "April Listing Agreement").[5] The April Listing Agreement provided Ms. Wyscaver would be entitled to a commission "upon the Purchase of the Property and [which] is payable upon closing of the transaction."[6] The term "Purchase" is defined as "the acquisition of any interest in the Property or the creation of any right to acquire any interest in the Property (including a contract or lease)."[7] The listing period for the April Listing Agreement expired October 31, 2010.

---

[3] Exhibit 10, Trustee Information Sheet.

[4] *See id.*

[5] Exhibit 9.

[6] *See* Exhibit 9, April Listing Agreement, at ¶ 7.2.

[7] *Id.* at ¶ 3.5.1.

Ms. Walton agreed to put under contract certain real property known as 15487 W. 66th Drive, Unit B, Arvada, CO 80007 (the "66th Drive Property") on April 22, 2010.[8]  Thus, the 66th Drive Property was under contract before the Petition Date and before expiration of the listing period.[9]  The closing on the 66th Drive Property occurred on September 17, 2010, after the Petition Date.[10]  On September 20, 2010, Ms. Wyscaver received her commission in the amount of $6,600 under the terms of the April Listing Agreement.[11]

The second commission in dispute arose from an Exclusive Right-to-Sell Listing Contract executed on June 4, 2010, between Ms. Wyscaver as broker and Ms. Janis L. Vondra as seller (the "June Listing Agreement"),[12] involving the sale of certain real property known as 6310 Oak Street, #101, Arvada, CO 80004 (the "Oak Street Property").  The June Listing Agreement provided Ms. Wyscaver would be entitled to a commission, earned upon the occurrence of any of the following events: 1) any sale of the property; 2) when Ms. Wyscaver found a buyer who is ready, willing and able to complete the transaction; or 3) any sale of the property within sixty days subsequent to expiration of the listing period to any buyer procured by Ms. Wyscaver.[13]  This document further contains a separate provision indicating the "commission obligation shall apply to a Sale made during the Listing Period" and "[t]he commission . . . shall be payable at the time of the closing of the Sale . . . ."[14]  The term "Sale" is defined in the June Listing Agreement as "the voluntary transfer or exchange of any interest in the Property or the voluntary creation of the obligation to convey any interest in the Property, including a contract or lease."[15]  The listing period for the June Listing Agreement expired December 31, 2010.

---

[8]  *See* Exhibit 6, Closing Check Sheet.  The Court notes a copy of the sale contract was not offered or admitted.  However, the Closing Check Sheet clearly indicates the date the sale was under contract.

[9]  *Id.*

[10]  *See* Exhibit 5, Settlement Statement.

[11]  *See* Exhibit 7.

[12]  Exhibit 10.

[13]  *Id.* at ¶ 7.2.

[14]  *Id.* at ¶ 7.3.

[15]  *Id.* at ¶ 3.5.1.

The Closing Check Sheet for the Oak Street Property[16] establishes the real estate was under contract on August 5, 2010,[17] before the Petition Date and before expiration of the listing period.[18] The closing occurred on September 8, 2010, after the Petition Date.[19] At closing on September 8, 2010, Ms. Wyscaver received her commission in the amount of $2,915 under the terms of the June Listing Agreement.[20]

**C.   Motion for Turnover**

On June 15, 2012, the Trustee filed his Motion for Turnover seeking an Order directing the Debtors to turn over to the Trustee all non-exempt assets, including all cash in hand, all account funds, and the non-exempt portion of the Debtors' earned but unpaid wages. The Trustee asserts these assets are property of the estate under § 541, and he has made repeated requests of the Debtors through their counsel to turn over these assets. The Trustee did not take into account the Debtors' claimed wage exemption for cash and account funds.

On June 29, 2012, the Debtors filed their Objection, contending:

(1)   the source of the cash and bank account funds held by the Debtors on the Petition Date were 100% wages. As such, these sums are entitled to a 75% wage exemption pursuant to COLO. REV. STAT. § 13-54-104(2)(a); and

(2)   Ms. Wyscaver's real estate broker commissions received after the Petition Date are not part of the bankruptcy estate.

**DISCUSSION**

A debtor shall, "if a trustee is serving in the case . . . surrender to the trustee all property of the estate and any recorded information, including books, documents, records, and papers, relating to property of the estate, whether or not immunity is granted under section 344 of this title."[21] Section 542(a)

---

[16]  Exhibit 3.

[17]  *Id*. The Court notes a copy of the sale contract was not offered or admitted. However, the Closing Check Sheet clearly identifies the date the sale was under contract.

[18]  *Id.*

[19]  *See* Exhibit 4.

[20]  *See* Exhibit 2.

[21]  § 521(a)(4).

requires debtors to turn over to the trustee all property of the estate or "the value of such property."[22] Section 541(a)(1) broadly defines property of the estate to include "all legal or equitable interests of the debtor in property as of the commencement of the case."[23] Whether a debtor's interest is "property of the estate" is a question of federal bankruptcy law, but the determination of property rights is controlled by state law.[24]

For a turnover order to be appropriate, a trustee must not only demonstrate the debtor received or had possession of estate property, but that the debtor was in possession of such property, or its value, at the time the turnover motion was filed.[25] A trustee must provide "proof that the property has been abstracted from the bankrupt estate and is in the possession of the party proceeded against. It is the burden of the trustee to produce this evidence, however difficult his task may be."[26] Here, the Trustee identified the non-exempt property in his Motion for Turnover and alleged the Debtors were in possession of those funds at the time the motion was filed. The Debtors did not dispute this allegation.

With respect to the Debtor's cash and account funds, resolution of this issue requires simple arithmetic. The Debtors do not dispute they held $250.00 cash on hand and $193.43 in a Wells Fargo checking account on the Petition Date. It is also undisputed the non-exempt portion of these assets is property of the estate. The Debtors claimed the 75% wage exemption for these assets under Colorado law. The Trustee did not file an objection to the Debtors' claimed exemptions, and stated at trial he does not oppose the claim. Therefore, the Trustee is entitled to recover for the benefit of the estate the 25% non-exempt portion of these assets. Accordingly, the Court determines the Debtors must turn over to the Trustee non-exempt cash in the amount of $62.50, in addition to non-exempt account funds in the amount of $48.36.

With respect to Mr. Wyscaver's earned but unpaid wages in the total amount of $1,191.78, the Debtors did not challenge turn over of the non-exempt portion of these wages. The Debtors claimed the 75% wage exemption

---

[22] *See, e.g. Jubber v. Ruiz (In re Ruiz)*, 455 B.R. 745, 752 (10th Cir. BAP 2011).

[23] § 541(a)(1).

[24] *See Butner v. United States*, 440 U.S. 48, 54-55 (1979) ("Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding.").

[25] § 542; *see also Hill v. Muniz (In re Muniz)*, 320 B.R. 697, 699-700 (Bankr. D. Colo. 2005).

[26] *Muniz*, 320 B.R. at 700 (*quoting Maggio v. Zeitz*, 333 U.S. 56, 63 (1948)).

for these wages, and the Trustee again did not oppose the claimed exemption. Therefore, the Trustee is entitled to recover for the benefit of the estate the 25% non-exempt portion of Mr. Wyscaver's earned but unpaid wages, and the Debtors must turn over to the Trustee Mr. Wyscaver's non-exempt wages in the amount of $297.95.

The primary dispute between the parties is whether Ms. Wyscaver's real estate broker commissions in the total amount of $9,515.00, which were received after the Petition Date are property of the bankruptcy estate under § 541(a)(1). If so, the Debtors must turn over the non-exempt portion to the Trustee.

In support of the Motion for Turnover, the Trustee relies on the holding in the case of *In re Ruetz*.[27] The *Ruetz* Court determined the debtor's real estate commissions received from the post-petition closing of a pre-petition sales contract were property of the estate, and the estate benefits from appreciation occurring as contingencies in a listing agreement are fulfilled. "A bankruptcy trustee takes the rights of a debtor subject to any contingencies that may burden those rights. That only means that a bankruptcy trustee must wait for the unfolding of future events to know what, if anything, those rights are worth."[28] The Court agrees with the reasoning and holding of *Ruetz*.

Here, the Court determines Ms. Wyscaver earned the commissions pre-petition subject to certain closing contingencies. The April Listing Agreement provides Ms. Wyscaver earned the commission upon "the creation of any right

---

[27] *In re Ruetz*, 317 B.R. 549 (Bankr. D. Colo. 2004).

[28] *Id.* at 553. In *Ruetz*, the Chapter 7 trustee filed a motion to compel the turnover of real estate commissions received by the debtor from the post-petition closing of a prepetition sales contract. On the petition date, the commission was subject to unfulfilled contingencies and the debtor argued her right to the commissions did not exist on the date of filing, or if it did, it was limited to a portion of the liquidated damages allowed by the contract. The Court examined COLO. REV. STAT. § 12–61–201 in conjunction with Colorado case law, and determined in Colorado a commission is earned when a broker produces a buyer. *Id.* at 552 (citing *Moore and Co. v. T-A-L-L, Inc.*, 792 P.2d 794, 799 (Colo.1990) ("A real estate broker acting under a valid listing agreement is entitled to receive a commission when the broker produces a purchaser who is ready, willing, and able to purchase the property upon the terms designated by the seller and when the broker is the efficient agent or procuring cause of the sale."); *Circle T Corp. v. Deerfield*, 166 Colo. 238, 444 P.2d 404, 406 (1968) ("The general rule is that a real estate broker, under a valid listing agreement, is entitled to recover a commission (1) when he produces a purchaser who is ready, willing and able to purchase the property upon the terms designated by the principal, and (2) he is the efficient agent or procuring cause of the sale."); *Real Equity Diversification, Inc. v. Coville*, 744 P.2d 756, 759 (Colo. Ct. App.1987) ("A real estate broker who has a valid listing agreement with the seller is entitled to recover a commission when he produces a purchaser who is ready, willing, and able to buy the property on the terms set by the seller.")).

to acquire any interest in the Property (including a contract or lease)."[29]  On the date the 66th Drive Property was under contract, the buyer held a right to acquire the property subject to closing.  Thus, Ms. Wyscaver earned the commission pre-petition, and the commission was payable at closing.  Although the closing occurred fourteen days after the Petition Date, Ms. Wyscaver held an interest in the commission pre-petition and this commission is property of the estate.

The analysis is similar in connection with the June Listing Agreement.  In that instance, Ms. Wyscaver would earn the commission upon the occurrence of one of three different events, including when she found a buyer who is ready, willing and able to complete the transaction.[30]  Ms. Wyscaver procured a ready, willing and able buyer at the latest on the date the sale was under contract, August 5, 2010.[31]  Thus, Ms. Wyscaver earned the commission pre-petition, and the commission was payable at closing. Although the closing occurred five days after the Petition Date, Ms. Wyscaver held an interest in the commission pre-petition and this commission is property of the estate.

The Debtors did not present any authority to the contrary, but argued *Ruetz* was distinguishable with respect to the 66th Drive Property because the sale of the 66th Drive Property was a short sale.  The Debtors argued the sale contract for the 66th Drive Property was not valid until approved by the bank post-petition.[32]  Ms. Wyscaver testified bank approval does not occur until after a sale contract is entered into.  She further testified the bank approved the short sale of 66th Drive Property post-petition, and thus she was not entitled to a commission until such approval was given.  Although the short sale scenario was not at issue in *Reutz*, this Court believes the outcome is the same.  The approval of the short sale of the 66th Drive Property was nothing more than another contingency to closing, and did not impact the creation of an obligation for Ms. Walton to purchase the 66th Drive Property subject to that additional contingency.

The Debtors claimed the 75% wage exemption for these commissions under Colorado law, and the Trustee did not oppose the claimed exemption.  Therefore, the Trustee is entitled to recovery for the benefit of the estate the 25% non-exempt portion of Ms. Wyscaver's earned but unpaid commissions, and the Debtors must turn over to the Trustee Ms. Wyscaver's non-exempt commissions in the amount of $2,378.75.

---

[29] Exhibit 9, April Listing Agreement, at ¶ 3.5.1.

[30] Exhibit 10, June Listing Agreement, at ¶ 7.2.

[31] *See* Exhibit 3.

[32] Other than testimony from Ms. Wyschaver, there was no evidence provided that the sale of the Oak Street Property was a "short sale."

## CONCLUSION

For the foregoing reasons,

IT IS ORDERED the *Trustee's Motion for Turnover of Property of the Estate* (Docket No. 28) is GRANTED. Within fourteen days from the date of this Order, the Debtors shall surrender to the Trustee the total amount of $2,787.56, consisting of $62.50 for non-exempt cash, $48.36 for non-exempt funds in accounts, $297.95 for Mr. Wyscaver's non-exempt earned but unpaid wages, and $2,378.75 for Ms. Wyscaver's non-exempt earned but unpaid commissions.

Dated November 9, 2012                    BY THE COURT:

Michael E. Romero
United States Bankruptcy Judge